******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# JOSEPH MATURO, JR. *v.* STATE EMPLOYEES RETIREMENT COMMISSION
## (SC 19831)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.*

*Syllabus*

Pursuant to statute (§ 7-438 [b]), if a member of the municipal employees' retirement system who is retired and has begun to collect a pension, again accepts employment from the same municipality from which he was retired, he shall be eligible to participate, and shall be entitled to credit, in the municipal employees retirement system for the period of such municipal employment, provided such member shall not receive his retirement allowance while so employed, except under certain specified circumstances.

The plaintiff appealed from the judgment of the trial court upholding the declaratory ruling of the defendant retirement commission and dismissing his administrative appeal. The plaintiff retired from his position as a firefighter with the town of East Haven in 1991 and was awarded a disability pension through his membership in the municipal employees retirement system, which is governed by the Municipal Employees' Retirement Act (§ 7-425 et seq.). From 1997 to 2007, the plaintiff served as the elected mayor of East Haven, a full-time, salaried position that the town had not designated for participation in the retirement system. During his tenure as mayor, the plaintiff continued to receive his disability pension, as it was the policy of the commission at that time that a member could continue to collect a pension while reemployed by a participating municipality, provided the member was reemployed in a nonparticipating position. In 2010, the retirement services division of the Office of the State Comptroller, which jointly administers the retirement system with the commission, informed the plaintiff that the commission's prior interpretation of the act was erroneous, and that, pursuant to § 7-438 (b), he no longer would be eligible to collect a disability retirement benefit if he were to be employed in any paid position with the town. When the plaintiff was again elected to the position of mayor of East Haven in 2011, the retirement services division suspended the plaintiff's pension. The plaintiff then appealed to the commission, which issued a declaratory ruling denying reinstatement of the plaintiff's pension. On appeal to the trial court, the plaintiff claimed, inter alia, that the decision of the commission was inconsistent with the statute (§ 7-432) that authorizes disability pensions because there had been no determination by a medical examining board that he was no longer disabled before his pension was suspended, and further claimed that he had relied to his detriment on the agencies' prior interpretation of the act. The trial court affirmed the commission's decision and rendered judgment dismissing the appeal, from which the plaintiff appealed. *Held:*

1. The trial court properly dismissed the plaintiff's appeal from the decision of the commission, the plain language of § 7-438 (b) having barred the plaintiff from continuing to collect a disability pension while serving as the mayor of East Haven: the plaintiff's claim that the act could be interpreted to exclude elective officers as employees, and that, as mayor, he was not an employee of the town as that term is used in § 7-438 (b), was unavailing, as that interpretation would deprive elective officers who are members of the retirement system from many of the rights and benefits that other members enjoy, and, in the absence of any apparent rationale for such a scheme or a clear statement of legislative intent, this court declined to adopt the interpretation urged by the plaintiff, which would achieve a bizarre outcome.

2. The plaintiff could not prevail on his claim that § 7-438 (b), when read as a whole and in light of the underlying policy rationales, evidenced a legislative intent to preclude a member of the retirement system from receiving a retirement pension only while reemployed in a participating position, and that, because he returned to work in a nonparticipating position, he was entitled to continue collecting his disability pension; notwithstanding the provision in § 7-438 (b) that a member "shall be

eligible to participate, and shall be entitled to credit," in the retirement system, a member of the retirement system, such as the plaintiff, who is reemployed in a nonparticipating position is not eligible to participate in the retirement system while so employed, and § 7-438 (b) reasonably may be understood to embody a legislative judgment that a participating municipality should not have to contribute additional funds to a member's retirement pension while at the same time paying the member's salary.

3. There was no merit to the plaintiff's claim that the commission and the trial court improperly interpreted § 7-438 (b) in isolation and did not consider its relationship to § 7-432 (g), which precludes the medical examining board from reconsidering eligibility for a disability pension unless additional facts concerning the member's condition are disclosed: subsection (g) was not added to § 7-432 until 2013, approximately two years after the retirement services division suspended the plaintiff's pension, and § 7-432 previously did not reference the medical examining board but, instead, delegated broad authority to the commission to determine a member's ongoing eligibility for a disability pension.

4. This court was not persuaded by the plaintiff's claim that the commission was bound by, or should have adhered to, its prior interpretation of § 7-438 (b) that permitted elective officials to retain their pensions while reemployed by participating municipalities in light of the fact that the legislature effectively acquiesced in that prior interpretation when it failed to amend the act, and the fact that the attorney general issued a nonbinding opinion letter counseling the commission not to deviate from its prior interpretation in the absence of further legislative direction: the evidence for legislative acquiescence in the commission's prior interpretation of the act was inconclusive and did not compel this court to depart from the plain meaning of the statutory text, and the legislature's failure to address the commission's revised interpretation when the legislature amended § 7-438 in 2011 tended to demonstrate acquiescence in the revised interpretation; moreover, the plaintiff's claim that the attorney general's opinion that the legislature had acquiesced in the commission's prior interpretation and that the revised interpretation might upset retirees' settled expectations was unconvincing, as an administrative agency, such as the commission, that discovers that it has been applying an erroneous interpretation of a statute is obliged, after giving fair notice to affected persons, to conform its policy to the correct interpretation, particularly in light of the provision (§ 7-439h) in the act that requires the commission to correct any erroneous overpayment of benefits.

Argued March 30—officially released July 11, 2017

*Procedural History*

Appeal from the decision of the defendant determining that the plaintiff was ineligible to receive certain pension benefits, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Schuman, J.*; judgment dismissing the appeal, from which the plaintiff appealed. *Affirmed.*

*Lawrence C. Sgrignari*, for the appellant (plaintiff).

*Michael J. Rose*, with whom was *Cindy M. Cieslak*, for the appellee (defendant).

*Opinion*

ESPINOSA, J. The plaintiff, Joseph Maturo, Jr., appeals from the judgment of the trial court upholding the declaratory ruling of the defendant, the State Employees Retirement Commission, and dismissing his administrative appeal. The plaintiff retired in 1991 from his position as a firefighter with the town of East Haven and was awarded a disability pension through his membership in the municipal employees retirement system (retirement system). He subsequently was elected to the position of mayor of East Haven in 1997, and served in that capacity until 2007, when he lost his reelection bid. During that time, the commission and the retirement services division of the Office of the State Comptroller (collectively, the agencies), which jointly administer the retirement system,[1] interpreted the Municipal Employees' Retirement Act (act), General Statutes § 7-425 et seq., to provide that a retired member, who is reemployed by a municipality that participates in the retirement system, may continue to receive a retirement pension if he or she is reemployed in a position, such as the mayor of East Haven, that the municipality has not designated for participation in the system (nonparticipating position). In 2009, however, the agencies concluded that they had misconstrued the act in this regard and that a retiree cannot continue to collect a pension while reemployed in any full-time position with a participating municipality. Accordingly, when the plaintiff was again elected mayor in 2011, the retirement services division suspended[2] his pension, a decision that both the commission and the trial court, *Schuman, J.*, subsequently affirmed. On appeal, the plaintiff's primary contention is that the agencies improperly construed the reemployment and disability pension provisions of the act,[3] and that he is not barred from receiving a disability pension while serving as the mayor of East Haven. The plaintiff also challenges the trial court's conclusions that he did not rely to his detriment on the agencies' previous interpretation of the act and that the commission did not violate his rights to equal protection and due process of law. Finding no error, we affirm.

I

FACTS AND PROCEDURAL HISTORY

The following facts and procedural history, as found by the commission and supplemented by the undisputed evidence of record, are relevant to our disposition of the plaintiff's appeal. The plaintiff served as a firefighter for the town of East Haven from 1973 to 1991, during which time he participated as a member of the retirement system. In September, 1991, the town separated the plaintiff from service on the basis of a "service-connected" disability. In a January, 1992 letter, the commission approved his application for early retirement,

but informed him that his retirement payments would be suspended if he again accepted employment with the town. In 1993, after the medical examining board confirmed the plaintiff's disability, the commission approved his "service-connected disability retirement," retroactive to October, 1991. A March, 1993 letter from the commission again advised the plaintiff as to the retirement system's reemployment rules, stating that "[his] eligibility for a disability retirement [pension] is contingent on [his] being permanently and totally disabled from performing any gainful employment in the service of [his] former employer [and that he] may not accept reemployment with that municipality."

In 1997, the plaintiff was elected to the office of mayor of the town of East Haven. At all times relevant to this case, although the town participated in the retirement system, it did not designate the office of mayor as a participating position. The plaintiff served as mayor from 1997 until 2007, when he lost a reelection bid. During that time, in spite of the warnings contained in the January, 1992 and March, 1993 letters, it was the policy of the agencies that a member could continue to collect a pension while reemployed by a participating municipality, so long as the member was reemployed in a nonparticipating position. Accordingly, during his initial ten years as mayor, the plaintiff received a salary from the town and also continued to collect his disability retirement pension.

In June, 2010, in response to information that the plaintiff was again considering running for elective office, Helen M. Kemp, the assistant director and counsel of the retirement services division, wrote to advise him that the commission's prior interpretation of the act was erroneous and that in the future he would not be eligible to collect a disability retirement benefit while employed in any paid position for the town. In a follow-up letter, Mark E. Ojakian, the deputy state comptroller and acting director of the retirement services division, explained that, in 2009, the retirement services division had adopted and begun informing members of this revised interpretation of the act. Despite these warnings, in November, 2011, the plaintiff again campaigned and won the election for the position of mayor of East Haven.

Shortly thereafter, the plaintiff received a letter from Kimberly McAdam, a retirement system supervisor, informing him that he was no longer considered to be disabled under the act because "[t]he fact that [he is] performing the duties of [mayor] indicates that [he is] neither permanently nor totally disabled from engaging in gainful employment in the service of the municipality." The letter notified the plaintiff that his pension would be "stopped" as of November 19, 2011. In that same time period, the commission sent letters to all disability retirees informing them that they could not

collect a disability retirement pension while working for the same municipality from which they had retired, even in a nonparticipating position.

The retirement services division subsequently declined the plaintiff's request to reconsider its decision. The plaintiff then appealed to the commission, which, following what the trial court characterized as "a long and somewhat complicated administrative review process," ultimately issued a declaratory ruling denying reinstatement of the plaintiff's retirement pension.

The plaintiff then appealed to the Superior Court. While proceedings in that court were pending, the General Assembly considered—for the second time in three years—legislation that would have expressly allowed the plaintiff and similarly situated members of the retirement system to continue to collect retirement pensions while reemployed by a participating municipality in a nonparticipating position. See Public Acts 2015, No. 15-188 (P.A. 15-188); Public Acts 2013, No. 13-219 (P.A. 13-219). The legislature unanimously passed each bill but Governor Dannel P. Malloy vetoed each one, and the legislature did not attempt to override the vetoes. See 2 Conn. Public and Special Acts 1478 (2015); 2a Conn. Public and Special Acts 2230 (2013).

The plaintiff made four primary claims before the trial court. First, he argued that the decision of the commission upholding the suspension of his disability pension while he is employed as the mayor of East Haven was inconsistent with various provisions of the act. Specifically, he argued that (1) General Statutes § 7-432, which authorizes disability pensions, does not allow the retirement services division to suspend a member's pension unless the commission's medical examining board first finds that the member is no longer disabled pursuant to § 7-432 (g), and (2) the provision on which the retirement services division relied in suspending his pension, General Statutes § 7-438 (b), which prohibits members of the retirement system from receiving a retirement pension while reemployed by a participating municipality, does not apply to former members who return to work in nonparticipating positions.

In its memorandum of decision, the trial court found the first argument to be without merit because, although the retirement services division initially had informed the plaintiff that his disability pension was being terminated because his reemployment with East Haven was prima facie proof that he no longer was disabled, the commission itself did not rely on the premise that the plaintiff no longer was disabled. Rather, the commission determined that § 7-438 (b) applies to both disability and ordinary retirements and bars members from collecting either type of pension while reemployed by a participating municipality. The trial court found the plaintiff's second statutory argument to be so incompre-

hensible as to be effectively abandoned. Nevertheless, the court did attempt to parse and evaluate the argument, which, it concluded, lacked any support in the text of the relevant statutes.[4]

Second, the plaintiff claimed that it was improper for the agencies, after years of construing the act to allow the plaintiff and others similarly situated to retain their retirement pension when returning to work in a nonparticipating position, to adopt a new, contrary interpretation of the law. He specifically argued that (1) he had reasonably relied to his detriment on the agencies' pre-2009 interpretation of the act and on a September 30, 2011 letter in which the retirement services division director, Brenda Halpin, advised him to take no action with respect to his current employment status until the retirement services division completed an administrative review of the issue, and (2) the commission should have abided by the advice of Attorney General George C. Jepsen, who counseled in a November 2, 2012 opinion letter (Jepsen opinion) that the commission not deviate from its pre-2009 interpretation of the act in the absence of further legislative direction.

In rejecting the plaintiff's detrimental reliance claim, the trial court noted that the law disfavors claims of estoppel against government entities, which "may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." (Internal quotation marks omitted.) *Chotkowski* v. *State*, 240 Conn. 246, 268–69, 690 A.2d 368 (1997). In the present case, the court determined that that standard was not satisfied because the retirement services division had notified the plaintiff that its prior interpretation of the act was erroneous and that, henceforth, he would not be permitted to receive a disability benefit while employed in any paid position with the town. In addition to concluding that the plaintiff's ongoing reliance on the retirement services division's past interpretation of the act was unreasonable, the court concluded that the plaintiff had failed to demonstrate that his reliance thereon had caused him any detriment. Rather, the court found that the plaintiff's erroneous receipt of a retirement pension during his previous ten year tenure as mayor had been a "windfall." The court further noted that the Jepsen opinion constituted nonbinding authority and that the opinion was unpersuasive insofar as it did not purport to analyze the statutes at issue or identify any defects in the commission's revised interpretation of the act. As a general matter, the court rejected as untenable the principle that a government agency must continue to adhere to an erroneous interpretation of a statute even when, having discovered its error, it provides fair notice to affected persons that it will change its policy in light of the revised interpretation.

Third, the plaintiff claimed that the commission treated him differently from other, similarly situated persons and thereby denied him equal protection of the law, as guaranteed by the federal and state constitutions. At trial, the plaintiff was unable to identify any other members who had been permitted to retain their retirement pensions after returning to work for participating municipalities.[5] Still, the plaintiff, a Republican, alleged that he had been singled out on the basis of his political affiliation insofar as the agencies (1) sent him an unsolicited letter in 2010, warning him that if he were again elected mayor, his pension would be suspended, (2) closely monitored the results of the East Haven mayoral election, (3) gave a Democrat, the registrar of voters for the town of East Haven, the express choice either to resign from his employment or to have his pension suspended, whereas the plaintiff's pension was simply suspended a few days after he was sworn into office, and (4) initially permitted another Democratic municipal retiree to retain her pension while reemployed, before ultimately reversing that decision. The plaintiff also introduced testimony by a Republican state senator suggesting that legislative efforts to amend § 7-438 (b) in 2013, to allow persons in the plaintiff's position to retain their pensions while reemployed had been delayed by certain legislators, presumably Democrats, who did not want to help the plaintiff.

The trial court found that the plaintiff also had abandoned this claim by inadequate briefing, insofar as he had failed to allege that any selective treatment was based on impermissible considerations or membership in a protected class. In the alternative, the court rejected the equal protection claim on the merits, finding that the commission had informed all disability pension recipients that they could not collect their pensions while working for the same municipality for which they had previously worked, even in a nonparticipating position. The court further concluded that the aforementioned factual allegations did not constitute selective treatment vis-a-vis other, similarly situated persons.

Fourth, the plaintiff claimed that the commission's decision to provide him with an informal rather than a formal hearing violated both the governing statutes and his right to procedural due process. The trial court, in rejecting this claim, determined that the relevant procedural statutes did not require the commission to hold a formal hearing and that the requirements of due process had been satisfied.

Consistent with these determinations, the trial court affirmed the commission's decision and dismissed the plaintiff's appeal. The plaintiff appealed from the judgment of the trial court to the Appellate Court, raising claims substantially similar to those he raised before the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and

Practice Book § 65-1. Additional facts will be set forth as necessary.

## II

### ANALYSIS

The plaintiff's primary argument on appeal is that the trial court misinterpreted the reemployment provisions of the act and that § 7-438 (b), when construed in the context of the overall statutory scheme, permits him to continue collecting a disability pension while employed by a participating municipality in a nonparticipating position. The commission disagrees, arguing that the plain language of § 7-438 (b) bars this sort of double recovery. We agree with the commission.

### A

We begin our analysis of the plaintiff's claim by setting forth the well established standards that govern judicial review of an agency decision under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. "Under the UAPA, it is [not] the function . . . of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . [Thus] [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . [Although] this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes . . . [c]ases that present pure questions of law . . . invoke a broader standard of review . . . . [W]hen a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . Even if [an agency's interpretation of a statute has been] time-tested, we will defer to [it] only if it is reasonable . . . [as] determined by [application of] our established rules of statutory construction." (Internal quotation marks omitted.) *Lieberman* v. *Aronow*, 319 Conn. 748, 755–56, 127 A.3d 970 (2015). No deference is warranted when an agency's construction of a statute has been inconsistent or is only of "recent vintage." *Schieffelin & Co.* v. *Dept. of Liquor Control*, 194 Conn. 165, 174, 479 A.2d 1191 (1984).

### B

In order to evaluate the plaintiff's claims, we first must describe in some detail the statutory framework that establishes and governs the retirement system. That framework is codified at § 7-425 et seq., which, as previously noted, we have referred to as the Municipal Employees' Retirement Act. See *Lambert* v. *Bridgeport*,

204 Conn. 563, 566, 529 A.2d 184 (1987).

Section 7-425 defines key words and phrases used in the act. That section defines a " '[m]ember' " of the retirement system as, among other things, "any regular employee or elective officer receiving pay from a participating municipality . . . who has been included by such municipality in the pension plan as provided in [§] 7-427 . . . ." General Statutes § 7-425 (5). " 'Pay' " is defined in relevant part as "the salary, wages or earnings of an employee . . . ." General Statutes § 7-425 (6). The terms "employee," "employed," and "employment" are not defined in the act.

General Statutes § 7-427 (a) authorizes each municipality to opt into the retirement system with respect to any department or departments that it chooses to designate for participation. Section 7-427 (a) also permits municipalities to decide whether to allow their elective officers to participate in the system.

General Statutes § 7-428 provides that any member shall be eligible for retirement and to receive a retirement pension upon either completing twenty-five years of aggregate service in a participating municipality or upon reaching the age of fifty-five and having completed five years of continuous service or fifteen years of aggregate service in a participating municipality. General Statutes § 7-429 further provides that an elective officer participating in the retirement system who is separated from service, except for cause or by resignation, after attaining the age of sixty and after completing at least twenty years of continuous service, shall be entitled to a retirement pension "upon reaching the voluntary retirement age . . . ."[6]

Section 7-432 authorizes and establishes the standards governing disability retirements. At the time the plaintiff's retirement pension was suspended in November, 2011, that section provided in relevant part: "Any member shall be eligible for retirement and for a retirement allowance who has completed at least ten years of continuous service if he becomes permanently and totally disabled from engaging in any gainful employment in the service of the municipality. For purposes of this section, 'gainful employment' shall not include a position in which a member customarily works less than twenty hours per week. If such disability is shown to the satisfaction of the Retirement Commission to have arisen out of and in the course of his employment by the municipality, as defined by the Workers' Compensation Act, [General Statutes § 31-275 et seq.] he shall be eligible for retirement irrespective of the duration of his employment. Such retirement allowance shall continue during the period of such disability. The existence and continuance of disability shall be determined by the Retirement Commission upon such medical evidence and other investigation as it requires. . . ." General Statutes (Rev. to 2011) § 7-432, as amended by

Public Acts 2011, No. 11-251, § 2.

General Statutes § 7-434a addresses the situation in which a member is elected to serve as an official of the state or any political subdivision thereof. Section 7-434a provides that such member may continue his or her membership in the system for up to ten years while serving in elective office, during which time the member must continue to make contributions to the system.

Finally, § 7-438 establishes the rules that govern a member who, having retired and begun to collect a retirement pension, again accepts public employment in the state. That statute provides as follows: "(a) Any member retired under this part who again accepts employment from this state or from any municipality of this state other than a participating municipality, shall continue to receive his retirement allowance while so employed, and shall be eligible to participate, and shall be entitled to credit, in the state retirement system for the period of such state employment, but any such member shall not be eligible to participate or be entitled to credit in any municipal retirement system for the period of such municipal employment.

"(b) If a member is retired under this part and again accepts employment from the same municipality from which he was retired or any other participating municipality, he shall be eligible to participate, and shall be entitled to credit, in the municipal employees' retirement system for the period of such municipal employment. Such member shall receive no retirement allowance while so employed except if *(1) such employment is for less than twenty hours per week, or (2)* his services are rendered for not more than ninety working days in any one calendar year, provided that any member reemployed for a period of more than ninety working days in one calendar year shall reimburse the Municipal Employees' Retirement Fund for retirement income payments received during such ninety working days."[7] (Emphasis added.) General Statutes § 7-438.

C

It was the conclusion of both the agencies and the trial court that the plaintiff's case represents a straightforward application of § 7-438 (b). The plaintiff was a member of the retirement system who, having retired pursuant to § 7-432, again accepted employment from East Haven, a participating municipality. Because § 7-438 (b) provides that "[s]uch member shall receive no retirement allowance while so employed," the commission determined, and the court agreed, that the retirement services division did not act improperly in suspending his retirement pension during his tenure in office.

On appeal, the plaintiff identifies what he considers to be four flaws in the commission's statutory analysis.

First, the plaintiff contends that his position as the mayor of East Haven does not constitute "employment" and that he is not an "employee" of that town for purposes of the act and, therefore, that § 7-438 (b) does not apply to his case. Second, he contends that § 7-438, when read as a whole, reveals a legislative intent to preclude a member from continuing to receive a retirement pension only while reemployed in a participating position. Third, the plaintiff contends that his case is governed by the disability provisions of the act as well as by its reemployment provisions and that, pursuant to § 7-432, his disability retirement could be discontinued only if the commission's medical examining board determined on the basis of additional medical evidence that he was no longer entitled to receive a disability benefit. Fourth, he contends that the commission is bound by, or should adhere to, its pre-2009 interpretation of the statute, in which the legislature allegedly acquiesced. We consider each argument in turn.

1

The plaintiff's first contention is that § 7-438 (b) does not govern his case because that subsection applies only to retired members who again accept *employment* from a participating municipality, and that the statute precludes members from receiving a retirement pension only while so *employed*. He avers that he is not employed by East Haven, as that term is used in the statute, notwithstanding that he receives a salary to serve as the town's full-time mayor.

When a term is not defined in a statute, we begin with the assumption that the legislature intended the word to carry its ordinary meaning, as evidenced in dictionaries in print at the time the statute was enacted. *State* v. *Wright*, 320 Conn. 781, 802, 135 A.3d 1 (2016); *State* v. *Menditto*, 315 Conn. 861, 866, 110 A.3d 410 (2015). Although the earliest version of the predecessor statute to § 7-438 used the term "appointment" rather than "employment," that statute did provide that a retired member who is reemployed by a municipality "shall receive no retirement allowance while so *employed*." (Emphasis added.) General Statutes (Supp. 1945) § 128h.[8] At the time § 128h was drafted, the word "employed" meant "[e]ngaged by an employer," and an "employee" was defined as "[o]ne employed by another; one who works for wages or salary in the service of an employer . . . ." Webster's New International Dictionary (2d Ed. 1941). The plaintiff cannot and does not seriously contend that his full-time, salaried work as the mayor of East Haven does not qualify as employment, as that term ordinarily has been used.

Instead, the plaintiff argues that the words "employee," "employed," and "employment" are statutory terms of art that have a particular meaning in the context of the act. He notes, for example, that § 7-425 (5) defines a " '[m]ember' " of the retirement system as

"any regular employee or elective officer," which, he contends, evinces a legislative intent to distinguish officers such as himself from employees. He further notes that § 7-425 (6) defines " '[p]ay' " as "the salary, wages or earnings of an employee," and finds meaningful the fact that that provision makes no mention of elective officers.[9]

The plaintiff's efforts to distinguish between municipal employees and elective officers, while valiant, are unavailing. We begin by observing that § 7-425 (5) defines a member of the retirement system as "any *regular* employee or elective officer . . . ." (Emphasis added.) If the statute had been written solely in terms of "employee or elective officer," the plaintiff's argument might be more convincing. But the legislature's use of the adjective "regular" to modify "employee" strongly suggests that, for purposes of the retirement system scheme, there are two classes of employees, namely, elective officers and other, regular employees. See *Dautel* v. *United Pacific Ins. Cos.*, 48 Wn. App. 759, 766–67, 740 P.2d 894 (1987) (discussing comparable use of term "regular"). Thus, we do not read § 7-425 to foreclose the possibility that elective officers are merely a subset of all employees for purposes of the act.

This interpretation is consistent with the fact that many provisions of the act refer only to "employees" or related cognate terms; specific mention of elective officers is made only in particular instances when distinct treatment is warranted. Compare, e.g., General Statutes § 7-425 (6) ("'[p]ay' means the salary, wages or earnings of an employee"), General Statutes § 7-428 (establishing voluntary retirement standards for employees), General Statutes § 7-437 (setting forth conditions under which employees' retirement pensions must be increased in conjunction with Social Security benefits), and General Statutes § 7-442a (using terms "member" and "employee" interchangeably), with General Statutes § 7-427 (a) (giving municipalities option whether to designate elective officers for participation in retirement system), and General Statutes § 7-430 (exempting elective officers from mandatory retirement rules).

It bears emphasizing in this regard that many provisions of the act that afford rights or benefits to members of the retirement system use only the terms "employees" or persons "employed" by a municipality, and do not mention elective officers. See, e.g., General Statutes § 7-431 (establishing retirement eligibility for members separated from service by employing municipality before voluntary retirement age); General Statutes § 7-434 (providing continuity of service benefit for full-time employees); General Statutes § 7-436 (b) (providing that employees and their surviving spouses are entitled to additional cost of living allowance); General Statutes § 7-436b (crediting military service prior to member's

date of employment); General Statutes § 7-442b (allowing employees to transfer retirement funds from state or other municipal retirement systems); General Statutes § 7-449 (providing that retirement pensions granted to members formerly employed by municipality shall not be affected by repeal of act); General Statutes § 7-459b (allowing members to participate in deferred retirement option plan adopted by municipality that employs them). If we were to accept the plaintiff's interpretation of the act and conclude that the term "employee" excludes elective officers, then elective officers who are members of the retirement system would be deprived of many of the rights and benefits that other members enjoy. In the absence of any apparent rationale for such a scheme or a clear statement of legislative intent, we decline to adopt an interpretation of the law that would achieve such a bizarre outcome. See *Levey Miller Maretz* v. *595 Corporate Circle*, 258 Conn. 121, 133, 780 A.2d 43 (2001).

Particularly fatal to the plaintiff's theory are those sections of the act that appear to equate elective officers with municipal employees or imply that the former as well as the latter can be "employed" for purposes of the retirement system. Section 7-429, for example, provides in relevant part that "[i]f any member of a participating municipality who is *an elective officer* is separated from the service of the municipality by which he is *employed* . . . he shall be entitled to a retirement allowance . . . ." (Emphasis added.)

Finally, we note that the original version of the reemployment statute barred retired members from collecting a pension while reemployed in any state or municipal position, but expressly exempted elective officers from that prohibition. See General Statutes (1949 Rev.) § 892. The 1973 amendments to the statute eliminated the carve-out for elective officers, suggesting that the legislature intended that they would be treated the same as other public employees with respect to reemployment. See Public Acts 1973, No. 73-519. For all of these reasons, we reject the plaintiff's argument that, by accepting the position of mayor of East Haven, he did not accept employment for purposes of § 7-438 (b).[10]

2

The plaintiff's second statutory argument is that § 7-438, when read as a whole and in light of the underlying policy rationales, evidences a legislative intent to preclude a member from receiving a retirement pension only while reemployed in a participating position. The argument, which is the plaintiff's strongest, is as follows. Section 7-438 envisions two paths by which a retired member may return to full-time public employment.[11] First, a member may be employed by the state or by a municipality that does not participate in the retirement system. Under those circumstances, § 7-438

(a) provides that the member can continue to collect his or her retirement pension, but will not be eligible to earn credit in any other municipality's own retirement system.[12] Second, the member can return to service in the same municipality from which he or she retired, or in another participating municipality. Under those circumstances, § 7-438 (b) provides that the member shall receive no retirement pension while so employed, but shall be eligible to participate and be entitled to additional credit in the retirement system. This scheme, the plaintiff contends, is predicated on the assumption that, at any particular time, a retired member will be entitled either to earn additional retirement credit, while reemployed by a participating municipality, or to collect a retirement pension, while not so employed. The member cannot simultaneously earn and collect, but the statute does not envision a scenario in which a retired member can neither collect a pension nor earn new credits. But that is precisely the plaintiff's situation, because, although he returned to work in a participating municipality, he did so in a nonparticipating position. The nub of his argument, then, is that the legislature did not intend that retired members who return to public service would have the worst of both worlds in this regard.

The key to the plaintiff's argument is the provision in § 7-438 (b) that a member who is reemployed by a participating municipality "shall be eligible to participate, and shall be entitled to credit, in the municipal employees' retirement system" (eligibility clause). Despite this provision, the parties agree that a member, such as the plaintiff, who accepts a nonparticipating position in a participating municipality is not in fact eligible to participate in the retirement system while so employed. But see footnote 15 of this opinion. In the face of this apparent contradiction, the commission essentially concedes that the eligibility clause either was inartfully drafted or suggests that the legislature failed to anticipate the type of scenario at issue in this case.

The conundrum we face, then, is that, under the circumstances of the present case, it seems that we must disregard either the eligibility clause, which allows members such as the plaintiff to participate in the retirement system, or the second sentence of § 7-438 (b), which bars such members from collecting a pension while so employed. The commission invites us to choose the former path, the plaintiff the latter. For several reasons, we find the commission's approach to be more sensible.

First, the commission offers a more plausible account of how all the different provisions of § 7-438 (b) can be given effect. See *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 274 Conn. 119, 129–30, 874 A.2d 776 (2005) (statute should be con-

strued so as to give effect to every provision). As we already have discussed, the plaintiff's solution to this conundrum—the theory that § 7-438 (b) simply does not apply to elective officers—is unconvincing. See part II C 1 of this opinion. The plaintiff also does not address the problem of nonofficer retirees who return to work in nonparticipating departments of participating municipalities. Various provisions of the act recognize that a participating municipality may choose to designate certain of its departments as nonparticipating; see, e.g., General Statutes §§ 7-427 (a), 7-436a (b), 7-437 and 7-442a; and we are not free to assume that the legislature simply overlooked this possibility when drafting § 7-438 (b). See *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, supra, 129 ("[w]e presume that the legislature is aware of existing statutes when enacting new ones").[13]

The commission, by contrast, offers a plausible account of how all the various provisions of the statute can be given effect. Specifically, the commission submits that the eligibility clause reasonably may be understood to mean that a retired member is entitled to earn additional retirement credits *so long as he or she is reemployed in a position for which such credits are available.*[14]

Alternatively, it may well be that the legislature meant exactly what it said, and that retired members such as the plaintiff are eligible to earn additional credits in the retirement system even while reemployed in nonparticipating positions. Although a municipality may opt not to designate its elective officers as participating positions; see General Statutes § 7-427 (a); other provisions of the act nevertheless allow for continued participation by members who leave their positions to work in nonparticipating governmental positions. Most notably, § 7-434a provides that any member who is elected to serve as an officer of the state or a subdivision thereof may elect to remain in the system and continue to make contributions for up to ten years.[15] See also General Statutes § 7-434 (granting credit for intervening military service).

Second, we are not persuaded that the plaintiff is correct in his assessment of the policy rationales that underlie § 7-438 and, specifically, that the statute embodies a legislative intent that all retired members should be able either to collect a pension or to earn additional retirement credits. On the one hand, the statute allows for certain instances of what the trial court referred to as "double dipping." For example, § 7-438 (a) permits a retired member to continue to collect a municipal retirement pension while also participating in the state employees' retirement system. On the other hand, it is not clear that a retired member should be allowed to receive a retirement pension while also earning a salary from a participating municipality. In 2013

and 2015, Governor Malloy vetoed amendments to the act that would have expressly permitted members who are reemployed in nonparticipating municipal positions to continue to collect a retirement pension. See P.A. 15-188; P.A. 13-219. In his 2015 veto message, the governor articulated a countervailing policy rationale: "I believe this bill would impose an undue burden on municipalities and is inconsistent with the purpose of the municipal retirement system, which is intended to provide assistance to our retirees and not current employees." 2 Conn. Public and Special Acts 1478 (2015). In other words, although it may seem unfair from the member's standpoint that he can neither receive a pension nor earn additional credits while reemployed in a nonparticipating position, § 7-438 (b) reasonably may be understood to embody a judgment that a participating municipality should not have to contribute additional funds to a member's retirement pension while at the same time paying his salary. See General Statutes § 7-441 (d) (providing that participating municipalities must make contributions to cost of administration of retirement fund on behalf of retired members receiving benefits, as well as currently employed members).

The plaintiff argues that, prior to 1987, § 7-438 clearly permitted retired members to collect a pension while reemployed with a different department or agency, and that we should hesitate before concluding that, in amending the statute, the legislature intended to curtail the ability of a member such as the plaintiff to return to work in a nonparticipating position. It is undeniable, however, that the legislature chose to substantially broaden the restrictions on reemployment at that time. Prior to 1987, a member could retain his or her pension while reemployed in any position outside the department or agency from which he or she retired. See General Statutes (Rev. to 1985) § 7-438 (a). After 1987, this exception was narrowed to reemployment by the state or a nonparticipating municipality. See Public Acts 1987, No. 87-83, § 2. Accordingly, the plaintiff's second statutory argument is unpersuasive.

3

The plaintiff's third statutory argument takes as its starting point the well established rule that we must "construe a statute as a whole and . . . harmonize its disparate sections within the bounds of reason." *State* v. *Gonzalez*, 210 Conn. 446, 451, 556 A.2d 137 (1989). He faults the agencies and the trial court for having considered § 7-438 (b) in isolation and, in his view, not having paid adequate attention to the relationship between that provision and the disability retirement provisions of § 7-432.

The plaintiff primarily relies on § 7-432 (g), which provides that "[n]o reconsideration of a decision concerning eligibility for a disability retirement allowance or the discontinuance of such allowance shall be made

by the medical examining board unless a member, upon application to the medical examining board for a redetermination, discloses additional facts concerning the member's condition." The plaintiff reads this to mean that the only way that his disability pension could be terminated was if the medical examining board, having considered new evidence, determined that he was no longer disabled.

If we were compelled to parse § 7-432 (g) and its relationship to § 7-438 (b), we likely would encounter any number of impediments to the plaintiff's argument.[16] Fortunately, we need not enter those waters. Subsection (g) was not added to the statute until July, 2013, nearly two years after the retirement services division suspended the plaintiff's pension. See Public Acts 2013, No. 13-247, § 385. Prior to that time, § 7-432 made no mention of the medical examining board. Instead, the statute delegated broad authority to the commission to determine a member's ongoing eligibility for a disability pension: "The existence and continuance of disability shall be determined by the . . . [c]ommission upon such medical evidence and other investigation as it requires." General Statutes (Rev. to 2011) § 7-432. Accordingly, the plaintiff's argument is unavailing.[17]

4

The plaintiff's fourth statutory argument is that the commission is bound by, or should adhere to, its prior interpretation of § 7-438. The plaintiff contends that this is especially true in light of the fact that (1) the Jepsen opinion counseled a stay-the-course approach, and (2) during the period from 1987 until 2009, during which the agencies were interpreting the act to permit elective officials such as the plaintiff to retain their retirement pensions, the legislature did not override the agencies by amending the act and, therefore, effectively acquiesced in the prior interpretation. We are not persuaded.

With respect to the plaintiff's legislative acquiescence argument, we frequently have explained that "the legislative acquiescence doctrine requires *actual acquiescence* on the part of the legislature. [Thus, in] most of our prior cases, we have employed the doctrine not simply because of legislative inaction, but because the legislature affirmatively amended the statute subsequent to a judicial or administrative interpretation, but chose not to amend the specific provision of the statute at issue. . . . In other words, [l]egislative concurrence is particularly strong [when] the legislature makes unrelated amendments in the same statute." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Stuart* v. *Stuart*, 297 Conn. 26, 47, 996 A.2d 259 (2010).

In the present case, the legislature made no changes to § 7-438 between 1987, when the statute was amended to prohibit members from collecting a retirement pen-

sion while reemployed by any participating municipality, and 2009, when the retirement services division announced its revised interpretation of the statute. By the time the legislature did make minor changes to the statute in 2011; see Public Act 11-251, § 3; this revised interpretation had been in effect for several years. Accordingly, the legislature's failure to address the issue in the 2011 amendment demonstrates, if anything, acquiescence in the agencies' *revised* interpretation. Moreover, although we recognize that the legislature voted overwhelmingly in 2013, and again in 2015, to amend § 7-438 to reinstate the pre-2009 interpretation, Governor Malloy vetoed both amendments and the legislature did not attempt an override. Accordingly, we conclude that the evidence for legislative acquiescence in the agencies' pre-2009 interpretation of the act is at best inconclusive and does not compel us to depart from the plain meaning of the statutory text. See *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 724–25, 855 A.2d 212 (2004).

Lastly, we consider the plaintiff's argument that the Jepsen opinion, while not binding on this court; see *Wiseman* v. *Armstrong*, 269 Conn. 802, 825, 850 A.2d 114 (2004); nevertheless represents highly persuasive authority to which the trial court should have deferred. As that court recognized, however, the Jepsen opinion neither purported to interpret the statutory language at issue nor concluded that the agencies' pre-2009 interpretation of § 7-438 was in any way superior to their revised interpretation. Rather, the Jepsen opinion concluded that neither interpretation was "clearly wrong." Ultimately, the only reasons the Jepsen opinion offered in support of its recommendation that the agencies hew to their pre-2009 interpretation were that (1) it believed that the legislature had acquiesced in that interpretation, and (2) adopting a new interpretation might upset retirees' settled expectations.[18] We already have explained why the legislative acquiescence argument is unconvincing. With respect to the reliance argument, we agree with the trial court that, in most instances, an administrative agency that discovers that it has been applying an erroneous interpretation of a statute is obliged, after providing fair notice to affected persons, to conform its policy to the correct interpretation. Cf. *Atchison, Topeka & Santa Fe Railway Co.* v. *Wichita Board of Trade*, 412 U.S. 800, 808, 93 S. Ct. 2367, 37 L. Ed. 2d 350 (1973). This is particularly true in the present case, insofar as the act expressly requires that the commission correct any erroneous overpayment of benefits. See General Statutes § 7-439h.

For all of these reasons, the plaintiff's statutory arguments are unpersuasive.[19] In addition, we have reviewed the plaintiff's other claims of error and find them to be without merit.[20]

The judgment is affirmed.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Eveleigh, McDonald, Espinosa and Robinson. Although Justice Robinson was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] See General Statutes § 5-155a (c); Regs., Conn. State Agencies §§ 5-155-2 and 5-155-7.

[2] Although the plaintiff refers at times to the "termination" of his pension, as do certain of the agencies' decisions, neither party disputes the trial court's conclusion that, under the commission's interpretation of the act, he will be entitled to a resumption of his retirement pension upon completion of his tenure as mayor. Accordingly, we use the term "suspension" rather than "termination."

[3] The text of the relevant statutory provisions is set forth in part II B of this opinion.

[4] Because (1) the issue is one of statutory interpretation, (2) the relevant arguments have been fully briefed before this court, and (3) the commission has indicated that it is in need of judicial guidance as to how to apply § 7-438 (b), we will evaluate the plaintiff's statutory claims on the merits despite the trial court's finding that they were abandoned at trial. See *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 233 n.12, 890 A.2d 509, cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006).

[5] The commission represented at trial that it was in the process of identifying any such members and they were being informed that, in the event the commission's interpretation of the act was upheld in this litigation, they could not continue to receive their pensions while reemployed.

[6] Although the term "voluntary retirement age" is not defined in the act, the commission has construed the phrase to refer to the eligibility standards set forth in § 7-428. See Connecticut Municipal Employees' Retirement Fund B Summary Plan Description (January 1, 1990) p. 5.

[7] Section 7-438 was amended in 2011 to add the highlighted language, which is not material to the present appeal. See Public Act 11-251, § 3. Although the amendment became effective July 13, 2011, it was made applicable only to members who retired on or after January 1, 2000. Public Act 11-251.

[8] General Statutes (Supp. 1945) § 128h provides: "If a member shall be retired under this chapter, and again accepts appointment, except to an elective office, from this state or from a municipality of this state, under which appointment services are to be rendered for more than three months in any year, he shall receive no retirement allowance while so employed."

[9] The other authorities on which the plaintiff relies relate to different statutory schemes and, therefore, do not support his argument that the term "employee" is used as a term of art in the act. See, e.g., General Statutes § 7-467 (2) (distinguishing municipal employees from elective officers solely for purposes of collective bargaining statutes, General Statutes § 7-467 et seq.); *Prudential Mortgage & Investment Co.* v. *New Britain*, 123 Conn. 390, 392, 195 A. 609 (1937) (distinguishing, for purposes of wage garnishment, between elective public officers and contract employees such as teachers).

[10] In his reply brief, the plaintiff argues that, if East Haven intended to make the position of mayor that of an employee, the town would have spelled out the benefits attached to that position in the town charter or elsewhere. This argument is purely speculative and, in any event, nothing in the act permits a town to designate its officers or personnel as nonemployees for purposes of the retirement system.

[11] Special exceptions, not relevant to the present case, are made for members reemployed for less than twenty hours per week or not more than ninety days per calendar year. See General Statutes § 7-438 (b).

[12] The statute does permit a retiree who returns to work for the state to simultaneously collect a municipal retirement pension and earn credits in the state retirement system, which the commission also administers. General Statutes § 7-438 (a).

[13] We note that, at approximately the same time that the legislature amended § 7-438 to add the present language regarding participating municipalities; see Public Acts 1987, No. 87-83, § 2; it also amended General Statutes § 7-444, which expressly addresses the possibility that a participating municipality may withdraw one or more departments from the retirement system. See Public Acts 1987, No. 87-85. Both amendments were drafted in the Labor and Public Employees Committee. Under those circumstances, it is

unrealistic to assume that legislators drafted the relevant amendments to § 7-438 unaware that a participating municipality might have employees who do not participate in the retirement system.

[14] This is consistent with the fact that subsection (a) of § 7-438 provides that any member who is reemployed with the state will be eligible to participate in the state employees retirement system. It seems unlikely that the legislature, in crafting the reemployment rules for municipal employees, intended to confer eligibility for state retirement on employees who would not otherwise be eligible for that program. See General Statutes § 5-158 (a) (listing classes of state employees in positions not covered by state retirement system or covered by state retirement system but ineligible to be members).

[15] We emphasize that, because the plaintiff has not claimed that either § 7-434a or § 7-438 (b) entitles him to eligibility or credit during his service as mayor, we express no opinion as to the potential merits of such a claim.

[16] The trial court, for example, was of the opinion that the relevant provisions of § 7-438 (b) are more specific than, and thus prevail over, the provisions of § 7-432 on which the plaintiff relies, and also that the plaintiff's argument leads to irrational and absurd consequences, in that his interpretation of the act would mean that any member retired pursuant to § 7-432 would in effect be exempted from § 7-438 (b).

[17] The plaintiff also argues that he is entitled to retain his disability pension under the 2011 revision of the statute, which provides in relevant part that "[a]ny member shall be eligible for retirement and for a retirement allowance who has completed at least ten years of continuous service if he becomes permanently and totally disabled from engaging in any *gainful employment in the service of the municipality*. . . ." (Emphasis added.) General Statutes (Rev. to 2011) § 7-432. His argument appears to be that his pension cannot be suspended so long as he is not again gainfully employed in the service of a participating municipality and that, for reasons that are not entirely clear, his position as the full-time, salaried mayor of East Haven does not constitute gainful employment in the service of that town. The trial court found this argument to be abandoned as inadequately briefed. In any event, the plain language of the act will not sustain the tortuous reading to which the plaintiff would affix it.

For similar reasons, we are not persuaded by the plaintiff's apparent argument that he is no longer a member of the retirement system and, therefore, not bound by § 7-438. Among other things, that interpretation is inconsistent with various provisions of the act that make clear that members remain members after retirement. See, e.g., General Statutes § 7-436 (setting forth benefits that "each member" shall receive after retirement); General Statutes § 7-439h (discussing receipt of retirement benefits by members).

[18] Although the Jepsen opinion also alluded to concerns regarding disparate treatment of members who apply for retirement on different dates, those concerns appear to be directed toward an unrelated issue addressed by that opinion, namely, a change in how the agencies evaluated disability retirement claims. Our understanding is that the agencies' revised reemployment policies will be applied without distinction to both current and future retirees.

[19] Because we conclude that the plain language of § 7-438 (b) bars the plaintiff's claim, we need not delve into the legislative history. See General Statutes § 1-2z. To the extent that any ambiguity remains, however, we note that the limited legislative history material to the questions before us generally favors the commission's interpretation of § 7-438 (b).

[20] With respect to the plaintiff's detrimental reliance claim, we agree with the trial court that (1) the plaintiff failed to establish that he relied *to his detriment* on the agencies' previous, contrary interpretation of § 7-438 (b), (2) once the commission came to understand that the prior interpretation of § 7-438 (b) was incorrect, it was permitted, if not required, to correct the error, at least on a prospective basis, and (3) in light of the fact that the retirement services division repeatedly warned the plaintiff that he would no longer be allowed to collect a pension if reelected as mayor, the fact that he might have received other, more equivocal guidance from the retirement services division fails to meet the exacting requirements for establishing a claim of detrimental reliance involving public funds. See *Chotkowski* v. *State*, supra, 240 Conn. 268; *Fennell* v. *Hartford*, 238 Conn. 809, 816, 681 A.2d 934 (1996).

With respect to the plaintiff's equal protection claim, we note that the allegedly political motivations of certain legislators in delaying the amendment of § 7-438 do not offend the equal protection clause. See *Hearne* v.

*Board of Education*, 185 F.3d 770, 775 (7th Cir. 1999). Moreover, setting aside the innuendo, the plaintiff's equal protection claims against the commission ultimately concern his complaints that (1) whereas the commission expressly gave one Democratic official the option either to resign or to lose his retirement pension, the plaintiff was presented with this same choice only implicitly, and (2) whereas the commission initially allowed another Democratic official to retain her pension before soon changing course and suspending it, the plaintiff's pension was suspended mere days after he assumed office. Even in the constitutional sphere, however, "the law [does not] concern itself with trifles . . . ." *Brandt* v. *Board of Education*, 480 F.3d 460, 465 (7th Cir. 2007).

Lastly, in his principal appellate brief, the plaintiff refers to his due process claims only in passing and fails to list those claims in his statement of issues. Accordingly, we decline to address those claims as inadequately briefed. See *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

---