### SUSAN CIFALDI *v.* ANTHONY CIFALDI, JR.
### (AC 30109)

Harper, Alvord and Foti, Js.

Argued September 23—officially released December 8, 2009

*Linda H. Ursin*, for the appellant (plaintiff).

*Matthew R. Potter*, with whom, on the brief, was *Melissa M. Donahue*, for the appellee (defendant).

*Opinion*

HARPER, J. The matter before us stems from the parties' divorce in 1993. The plaintiff, Susan Cifaldi, appeals from the judgment of the trial court denying her postjudgment request for an order that the defendant, Anthony Cifaldi, Jr., pay to the plaintiff her share of pension disbursements made to him. On appeal, the plaintiff claims that (1) the order requested was necessary to effectuate and to preserve the integrity of the original dissolution judgment and (2) the court improperly applied the defense of laches. After careful consideration of the plaintiff's claims, we hold that under the allocation of marital property per the marriage dissolution judgment, the plaintiff became entitled to a defined portion of the defendant's pension benefits. The defendant has received the plaintiff's portion of his pension benefits. Therefore, the court should have fashioned an order compelling the defendant to pay the moneys to her. Additionally, we hold that the court improperly relied on laches as an alternate ground to deny the relief requested. Accordingly, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

The following facts and procedural history are relevant to the plaintiff's appeal. The parties' marriage was dissolved on October 25, 1993. On that date, the court approved a separation agreement between the parties and incorporated the terms of the separation agreement into the dissolution judgment. Pursuant to that agreement, the parties agreed that two qualified domestic relations orders (QDROs)[1] would be executed,

---

[1] "A QDRO is the exclusive means by which to assign to a nonemployee spouse all or any portion of pension benefits provided by a plan that is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq." *Krafick* v. *Krafick*, 234 Conn. 783, 786 n.4, 663 A.2d 365 (1995).

assigning to the plaintiff a portion of the defendant's pension benefits under two pensions. The first QDRO was to be entered "against [the defendant's] Travelers [Corporation] pension,[2] in an amount equal to one-half the benefits payable to [the defendant] as of the date of dissolution." The second QDRO was to be entered "against [the defendant's] military pension,[3] in an amount equal to [five sixteenths] of the current value of said pension as of the date of judgment, whether or not vested." The agreement further provided that "the court shall retain jurisdiction regarding the foregoing QDROs and of said pensions pursuant to the foregoing provisions so as to effectuate the foregoing terms and conditions." The agreement stipulated that the "[p]laintiff's attorney shall prepare said QDROs."

In their respective briefs, both parties agree that the defendant retired in 2005 and began receiving retirement benefits from both the Travelers Corporation pension and the military pension shortly thereafter. The parties also agree that, as of the date the defendant retired, neither pension administrator had processed QDROs against the defendant's pensions.[4] As such, the

---

[2] This refers to a Travelers Corporation pension plan in which the defendant was a participant. Due to a merger between the Travelers Corporation and Citigroup, the defendant's Travelers Corporation pension is now administered by Citigroup. We will continue to refer to this pension as the Travelers Corporation pension throughout this opinion.

[3] This refers to a pension plan that the defendant was a part of through his military service. The defendant's military pension is administered by the United States Department of Defense.

[4] There is some disagreement as to the reason why these QDROs were not processed by the pension plan administrators. The court file contains two QDROs dated October 25, 1993, signed by the plaintiff, the defendant and Judge Klaczak, who rendered the dissolution judgment. The plaintiff testified that she sent the signed QDROs by certified mail to the plan administrators in 1995 and received return receipts indicating that they had been delivered. The plaintiff testified that the return receipts were not available because she had lost them. As such, there are documents in the file showing that the plaintiff prepared the QDROs and that the defendant signed them; however, there is no documentary evidence to support the plaintiff's testimony that she actually submitted the QDROs.

payments the defendant began receiving from each pension included the portions that had been allocated to the plaintiff in the parties' separation agreement.

Not having received her portion of the defendant's pension benefits, the plaintiff filed a motion to open the judgment on February 1, 2008. In her motion to open the judgment, the plaintiff sought to require the defendant to sign new QDROs to be submitted to the administrators of the defendant's pension plans so that she could begin to receive, prospectively, the payments promised to her under the dissolution judgment.[5] The plaintiff also sought to require the defendant to "reimburse to [the plaintiff] the amount of payments retained by [the defendant] that are the property of [the plaintiff]." A hearing was held on April 8, 2008, regarding the motion to open the judgment. On that date, the plaintiff also filed a motion for contempt against the defendant. In the plaintiff's motion for contempt, she asked the court, in relevant part, to find the defendant in contempt for "failure to pay to [the] [p]laintiff the portion of his pension payments he has received that are the property of [the] [p]laintiff . . . ." The plaintiff also asked the court to order the defendant to pay to her an amount equal to the portion of his benefits that she would have received had the QDROs properly been in place at the time the defendant retired and began receiving benefits.[6]

---

[5] The court found that after the plaintiff filed her motion to open, a QDRO was signed by agreement of the parties, approved by the court and delivered to the Citigroup pension administrator. The court also noted that the parties had drafted a QDRO applying to the defendant's military pension benefits and appeared likely to work out the terms of the QDRO to conform to the original judgment. Therefore, the only issue before us is the pension payments the defendant received before corrective QDROs were put in place to pay benefits to the plaintiff as per the dissolution judgment.

[6] We note that although the plaintiff's April 8, 2008 motion was captioned a motion for contempt, consistent with the relief sought therein, it would have been more accurate for the plaintiff to have captioned the motion as a motion for contempt and for order. Despite the inaccurate label, the court properly considered the substance of relief sought in the subject motion,

The court denied the plaintiff's requests that the defendant pay to the plaintiff her portion of his pension benefits. The court found that its decision declining to order the defendant to pay to the plaintiff her share of the pensions did not constitute a modification of the property settlement that had been incorporated into the dissolution judgment. As an alternate ground, the court went on to find that, even if the plaintiff were entitled to the moneys at issue, the defense of laches had been established, and the plaintiff was not entitled to the relief sought. The plaintiff appealed.

I

The plaintiff first claims that the order she requested, namely, that the defendant pay to her portions of the prior pension disbursements, was necessary to effectuate and to preserve the integrity of the dissolution judgment. We agree with the plaintiff.

We begin by setting forth our standard of review. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the

which requested, in addition to an order for contempt, postjudgment orders for payment to the plaintiff of the portions of the defendant's pensions to which she was entitled. See *Bijur* v. *Bijur*, 79 Conn. App. 752, 754 n.1, 831 A.2d 824 (2003).

record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Kaczynski* v. *Kaczynski,* 109 Conn. App. 381, 385, 951 A.2d 690 (2008), rev'd on other grounds, 294 Conn. 121, 981 A.2d 1068 (2009).

When an agreement of the parties to the dissolution of marriage is incorporated into the judgment, it becomes a contract of the parties. *Sachs* v. *Sachs,* 60 Conn. App. 337, 341–42, 759 A.2d 510 (2000). "[T]he construction of a written contract is a question of law for the court. . . . The scope of review in such cases is plenary. . . . Because our review is plenary, involving a question of law, our standard of review is not the clearly erroneous standard used to review questions of fact found by a trial court. Our review of the parties' agreement is plenary . . . ." (Citations omitted; internal quotation marks omitted.) Id., 342. Thus, our review of whether the plaintiff was entitled to the pension payments under the separation agreement that was incorporated into the judgment by the parties is plenary.

As an initial matter, we must determine whether there was a distribution of property and whether this distribution has been violated. It is well established that pension benefits are a form of property under General Statutes § 46b-81. Our Supreme Court has held "that 'property' as used in § 46b-81, includes the right, contractual in nature, to receive vested pension benefits in the future." *Krafick* v. *Krafick,* 234 Conn. 783, 798, 663 A.2d 365 (1995). There is no question that a party's property interest in a pension is an important consideration in an allocation of property pursuant to a dissolution judgment. "Pension benefits are widely recognized as among the most valuable assets that parties have when a

marriage ends. . . . Pension benefits are an economic resource acquired with the fruits of the wage earner spouse's labors which would otherwise have been utilized by the parties during the marriage to purchase other deferred income assets. . . . Both [spouses] have the same retirement goals and expectancies regarding the pension benefits as they would if they provided for their later years by using wage income to purchase other investments. . . . It would be unfair and contrary to the purpose of the statute to strip the nonemployee spouse of the value of the retirement asset by precluding [the trial court] from evaluating its worth prior to adjudicating the property rights of the estranged marriage partners." (Citations omitted; internal quotation marks omitted.) Id., 796–97.

Section 12 of the parties' separation agreement is titled "Pensions." Subsection A of § 12 of the agreement states that "[a] [QDRO], shall enter, in favor of [the plaintiff], against [the defendant's] Travelers [Corporation] pension, in an amount equal to one-half the benefits payable [to the defendant] as of the date of dissolution." Subsection B of § 12 states that "[a] QDRO shall enter, in favor of [the plaintiff], against [the defendant's] military pension, in an amount equal to [five sixteenths] of the current value of said pension as of the date of judgment, whether or not vested." The clear import of § 12 of the agreement is that one half of the defendant's pension from the Travelers Corporation, determined as of the date of judgment, and five sixteenths of the military pension, also valued as of the date of judgment, are the property of the plaintiff. A QDRO is merely an administrative tool used to effectuate the transfer of marital property, in this case pension benefits, from an employee to a nonemployee spouse. Given the well recognized importance of pension benefits as a piece of marital property, the obvious significance of pension benefits to any property allocation

made as part of a dissolution judgment and the expectations of the parties to that judgment, we do not read the parties' agreement in the case before us to make the vesting of the plaintiff's property interest in a portion of the defendant's pension benefits to be in some way contingent on the successful processing of the QDROs.[7] To put it simply, we conclude that the plaintiff's property interest in portions of the defendant's pension benefits was not predicated on the processing of paperwork; the plaintiff cannot be deprived of this important asset on the basis of a mere administrative error. We hold that the plaintiff was entitled to her portion of the defendant's pension benefits.

Having held that the defendant received marital property that belonged to the plaintiff, the remaining inquiry before us is whether the defendant is obligated to return the plaintiff's property. The defendant concedes in his appellate brief that the court lacks jurisdiction to modify property division orders. Our Supreme Court has held that "[b]y its terms, [§ 46b-81] deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under General Statutes § 46b-81." *Bunche* v. *Bunche*, 180 Conn. 285, 289, 429 A.2d 874 (1980). The plaintiff essentially claims that the failure of the court to issue orders that were necessary to effectuate its original assignment of property in the parties' marital dissolution action was tantamount to an impermissible modification of the original property division. We agree.

[7] In any event, subsection E of § 12 of the agreement stated that the "[p]laintiff's attorney shall prepare said QDROs." The file contains two QDROs prepared by the plaintiff's attorney and signed by the parties and the court, dated October 25, 1993. Thus, even if the plaintiff's right to her share of the defendant's pensions was subject to some sort of condition precedent, the plaintiff clearly satisfied that condition when her attorney prepared QDROs that were signed by the court and all parties.

"A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact." (Internal quotation marks omitted.) *Roos* v. *Roos*, 84 Conn. App. 415, 422, 853 A.2d 642, cert. denied, 271 Conn. 936, 861 A.2d 510 (2004). In keeping with this reasoning, we hold that when a party has been denied marital property to which the party is entitled as part of the allocation of property pursuant to a judgment of dissolution of marriage, and the aggrieved party seeks relief from the court, the court is under an affirmative obligation to issue financial orders effectuating the existing allocation of marital property to protect the integrity of the original judgment, subject to equitable defenses. To hold otherwise would allow a court to modify a property distribution simply by its own silence or inaction. See *Rosato* v. *Rosato*, 77 Conn. App. 9, 15, 822 A.2d 974 (2003) (reasoning that, where husband was in arrears in paying to wife her share of his pension payments, "[i]f the [trial] court had not determined an amount due . . . but simply had ordered payments prospectively . . . the court would have been in violation of § 46b-81, which requires that property orders be made at the time of marital dissolution"). Accordingly, the court should have granted the relief requested by ordering the defendant to return to the plaintiff her share of the defendant's pension benefits that he had received.

## II

We next address the issue of laches.[8] Laches is an equitable defense that consists of two elements. "First,

[8] The plaintiff claims that she has brought an action at law, and, therefore, the court improperly applied the defense of laches, which is purely an equitable defense. "Laches is purely an equitable doctrine, is largely governed by the circumstances, and is not to be imputed to one who has brought an action at law . . . . It is an equitable defense allowed at the discretion of the trial court in cases brought in equity." (Citation omitted; internal quotation marks omitted.) *Giordano* v. *Giordano*, 39 Conn. App. 183, 214, 664 A.2d 1136 (1995). The issue of whether the nature of the plaintiff's action

there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the defendant . . . as where, for example, the defendant is led to change his position with respect to the matter in question." (Citation omitted; internal quotation marks omitted.) *Burrier* v. *Burrier*, 59 Conn. App. 593, 596, 758 A.2d 373 (2000). Thus, prejudicial delay is the principal element in establishing the defense of laches. Id.

"The standard of review that governs appellate claims with respect to the law of laches is well established. A conclusion that a plaintiff has been guilty of laches is one of fact . . . . We must defer to the court's findings of fact unless they are clearly erroneous." (Internal quotation marks omitted.) *Caminis* v. *Troy*, 112 Conn. App. 546, 552, 963 A.2d 701, cert. granted on other grounds, 291 Conn. 909, 969 A.2d 171 (2009). The court found that "[t]he defendant, because of the plaintiff's inaction or error, has paid taxes on the pension he received and would indeed be prejudiced now by having to return a portion of that income to the plaintiff . . . ." We disagree with the court's finding that because the defendant has paid taxes on the pension payments he has received already, he would be prejudiced by being required to pay to the plaintiff the portion he received in error.

is equitable or legal is a question of law, and, therefore, our review is plenary. See *Weinstein* v. *Weinstein*, 280 Conn. 764, 770, 911 A.2d 1077, after remand, 104 Conn. App. 482, 934 A.2d 306 (2007), cert. denied, 285 Conn. 911, 943 A.2d 472 (2008). We repeatedly have held that a court order designed to protect the integrity of the original judgment, which is what the plaintiff has requested here, is an exercise of the court's equitable power. See *Clement* v. *Clement*, 34 Conn. App. 641, 646, 643 A.2d 874 (1994); *Roberts* v. *Roberts*, 32 Conn. App. 465, 471, 629 A.2d 1160 (1993); *Niles* v. *Niles*, 9 Conn. App. 240, 246, 518 A.2d 932 (1986). Therefore, we must disagree with the plaintiff. The relief the plaintiff seeks is equitable in nature, and laches is an available defense.

We first note that in our review of the record, we cannot find any evidence that the defendant has in fact paid taxes on the pension payments he received. Although the defendant's attorney made statements to the effect that the defendant has paid taxes, "[t]he court [can] not properly rely on argument by the defendant's attorney or on matters not in evidence in finding prejudice to the defendant." *Burrier* v. *Burrier*, supra, 59 Conn. App. 597. Furthermore, even if we assume arguendo that the defendant has paid taxes on the pension benefits he received, no evidence was presented as to whether the defendant, upon demonstration that he had received income in error, would be able to recoup such taxes from the government. Additionally, the plaintiff, in argument before the court regarding her request for payment, conceded that "[t]here may need to be adjustments for . . . taxes." The court could, as the plaintiff requested, determine the amount of taxes, if any, that the defendant paid on the overpayments he received and reduce the plaintiff's remuneration accordingly. This would eliminate any potential claim of prejudice by the defendant. The mere fact that the defendant might have paid taxes on property he received in error does not immunize him from being required to repay the plaintiff altogether.[9] We hold that because the defendant did not show prejudicial delay, it was clearly erroneous for the court to have found that he had established the defense of laches.[10]

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[9] Beyond the issue of taxes, no other evidence was submitted that the defendant detrimentally relied on the overpayments or was led to change his position.

[10] Because we agree with the plaintiff that no prejudice was established, we do not address the conclusion of the court that the delay was inexcusable.