******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

MICHAEL S. BRACKEN, JR. *v.* TOWN OF
WINDSOR LOCKS
(AC 39680)

Lavine, Alvord and Prescott, Js.

*Syllabus*

The plaintiff, who had been employed as a police officer by the defendant
town and had entered into a settlement agreement with the town arising
out of a prior action concerning his wrongful termination, sought to
recover damages arising out of the town's alleged breach of that
agreement. The agreement provided that, for the period between 1987
and 1993 during which the plaintiff was not employed by the town, the
town would restore him to "full benefits, privileges and emoluments of
employment." He claimed that the town breached that agreement by
failing to purchase certain credits toward his pension for those years.
The matter was tried to the court, which determined that the plaintiff's
action, which was commenced in 2014, was barred by the six year
statute of limitations pertaining to contracts (§ 52-576) and the doctrine
of laches. On the plaintiff's appeal to this court, *held*:

1. The trial court improperly concluded that the plaintiff's action was barred
   by § 52-576; that court based its conclusion on an erroneous factual
   finding that the action accrued when the town first failed to make the
   pension contributions after the plaintiff's employment was reinstated, as
   the plaintiff pleaded and proved that pension credits could be purchased
   retroactively at any time prior to the date that he began to receive
   pension benefits such that the town could have performed its obligation
   under the agreement by purchasing the pension credit at any time after
   he was reinstated, and because neither the testimony of the former
   police chief that he had no involvement in and was not aware of any
   decision as to whether the town would purchase the pension credits,
   nor the statute (§ 7-441) that obligated the town to make monthly contri-
   butions to the pension system while the employee worked for the town
   and participated in the system, supported the town's position that the
   breach occurred when the town first failed to make a payment to the
   plan after the plaintiff was reinstated, the town failed to meet its burden
   of proof on its statute of limitations defense.

2. The trial court improperly determined that the plaintiff's action was barred
   by the doctrine of laches: that court's determination that the delay was
   unreasonable and inexcusable was premised on its erroneous factual
   finding that the alleged breach occurred upon the town's failure to make
   the contribution to the pension plan, and its finding that the town was
   prejudiced because it would incur significantly larger damages in order
   to purchase the pension credit at that time was clearly erroneous and
   not supported by the record, which showed that the town presented no
   evidence beyond a certain letter from the retirement commission as to
   the relative cost of purchasing the pension credit; accordingly, because
   the town failed to show prejudicial delay, the court incorrectly concluded
   that it had established the defense of laches.

Argued February 14—officially released June 5, 2018

*Procedural History*

Action to recover damages for, inter alia, breach of
contract, and for other relief, brought to the Superior
Court in the judicial district of Hartford, where the
matter was tried to the court, *Elgo, J.*; judgment for the
defendant, from which the plaintiff appealed to this
court. *Reversed; further proceedings.*

*Gregg D. Adler*, with whom, on the brief, was *Zachary
L. Rubin*, for the appellant (plaintiff).

*Kevin M. Deneen*, for the appellee (defendant).

*Opinion*

ALVORD, J. In this action for breach of a settlement agreement, the plaintiff, Michael S. Bracken, Jr., appeals from the judgment of the trial court rendered in favor of the defendant, the town of Windsor Locks. On appeal, the plaintiff claims that the court erroneously concluded that the plaintiff's action was barred by (1) the six year statute of limitations set forth in General Statutes § 52-576, and (2) the doctrine of laches.[1] We conclude that the central factual finding underlying the court's conclusion that the defendant's special defenses barred the action was clearly erroneous. We further conclude that the defendant failed to meet its burden of proving that its special defenses barred the plaintiff's action. Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings.

The following facts, which were found by the trial court in its memorandum of decision or are otherwise undisputed, and procedural history are relevant to this appeal. At all times relevant, the defendant participated in the Connecticut Municipal Employee Retirement System (CMERS) for police officers employed by the defendant.[2] The plaintiff was formerly employed by the defendant as a supernumerary police officer, until his employment was terminated in 1987. In August, 1990, the plaintiff filed an action in federal court against the defendant. While that litigation was pending, the plaintiff returned to employment with the defendant on June 19, 1993, as a full-time police officer. The federal action was resolved by way of a written settlement agreement executed on April 21, 1994, between the plaintiff and the defendant. That settlement agreement (agreement) provided, in relevant part: "As further consideration for Bracken's agreement to be bound by the terms of this agreement, defendant town of Windsor Locks agrees to reinstate Bracken to a full-time police officer position as of June 19, 1993 with a seniority date of one day earlier than Officer Squires and to restore to Bracken as of June 19, 1993 full benefits, privileges and emoluments of employment based upon that seniority date." Officer Squires had a seniority date of September 14, 1987.[3]

Following the execution of the agreement, the defendant restored certain benefits, privileges, and emoluments of employment based on a seniority date of September 13, 1987. The defendant did not purchase pension credit for the plaintiff covering the period of time from September 13, 1987 through June 18, 1993 (pre-reinstatement period), and the plaintiff became aware in late 2002 or early 2003 that the defendant had not purchased the credit. The plaintiff was placed on administrative leave in August, 2007. In September, 2007, the plaintiff wrote a letter to CMERS stating that he had brought the issue of the pension credit to the defendant's attention on many occasions, but it had

done nothing to resolve the issue. The plaintiff stated that Chief of Police John Suchocki had told him that the defendant wanted to wait until the plaintiff retired to make the payments, a position that the plaintiff found "unacceptable." The plaintiff's employment with the defendant terminated on or about November 19, 2009. By letter dated March 16, 2010, the defendant inquired of the Statement Employee Retirement Commission (retirement commission) as to the cost to purchase the pension credit for the pre-reinstatement period. The retirement commission responded by letter dated April 29, 2010, that a payment in the amount of $99,316 would be necessary to purchase the additional pension credit. Beginning in May, 2010, the State Board of Mediation Arbitration held hearings on a grievance the plaintiff had filed challenging his termination of employment.

On February 11, 2014, the plaintiff commenced the present action alleging breach of contract and breach of the implied covenant of good faith and fair dealing. In his amended complaint filed December 16, 2015, the plaintiff alleged that after he resumed his employment as a police officer, the defendant had restored to him "all benefits, privileges and emoluments of employment based on the seniority date of September 13, 1987, with the exception of his pension benefits." Specifically, he alleged that "[p]ension credits for Windsor Locks police officers are purchased by the town through the State of Connecticut Municipal Employees Retirement Fund" and that such credit "can be purchased retroactively at any time prior to the date the employee begins receiving retirement benefits." He alleged that he became aware that the defendant had not yet purchased pension credit for him for the pre-reinstatement period and that he raised his concerns with the defendant on several occasions. He claimed that "at no time prior to 2013 was the plaintiff informed by the town that it would not comply with its contractual agreement to provide pension credits" for the pre-reinstatement period.

The plaintiff further alleged that his counsel wrote letters to the defendant on July 30, 2013, and October 3, 2013. The plaintiff alleged that his counsel, in the October 3, 2013 letter, requested that the defendant provide "written confirmation that the town is currently refusing to purchase pension credits or otherwise provide retirement benefits to the plaintiff" for the pre-reinstatement period. The plaintiff alleged that the letter concluded: "If I do not receive a response to this letter by October 31, 2013, we will assume that the town has formally refused to provide these benefits . . . ." The plaintiff alleged that the defendant did not respond to the letter.

In count two of the complaint, the plaintiff claimed that the defendant breached the implied covenant of good faith and fair dealing in that it had no good faith basis for refusing to purchase the pension credit and

that its reasons for "refusing to comply with the terms of the contract are based on personal animosity toward the plaintiff." The plaintiff sought an order requiring the defendant to purchase the pension credit for the pre-reinstatement period.

The defendant answered and filed special defenses to the amended complaint alleging, inter alia, that the plaintiff's action was barred by the statute of limitations set forth in § 52-576[4] and the doctrine of laches. The parties elected a court trial, which was held on February 17 and 18, 2016. The parties stipulated to a number of facts, and the stipulation was entered into evidence as a court exhibit. Eight of the plaintiff's exhibits and four of the defendant's exhibits were agreed upon and received by the court as full exhibits. During trial, two witnesses testified: the plaintiff, and John Suchocki, former chief of police for the town of Windsor Locks. Both parties filed posttrial briefs.

On August 3, 2016, the court issued a memorandum of decision, in which it rendered judgment for the defendant after concluding that the plaintiff's action was barred both by the statute of limitations and the doctrine of laches. The court in its memorandum noted that the action involved the plaintiff's claim that the agreement included the retroactive purchase of pension credit for the pre-reinstatement period. The court also found that the "defendant has consistently denied having an obligation under the contract" to purchase the credit, and that the plaintiff learned in late 2002 or early 2003 that the defendant had not purchased the credit. The court in its memorandum stated that since then, the plaintiff had been in a dispute with the defendant and had engaged counsel to assist with his claim. After referencing both parties' inquiries to the retirement commission, the plaintiff in September, 2007, and the defendant in spring, 2010, the court then rejected the plaintiff's argument that the defendant's spring, 2010 inquiry constituted evidence that the defendant had not yet decided that it would not purchase the pension credit for the plaintiff. It found instead that the plaintiff had been aware since 2002 that the defendant "was refusing to make those contributions" pursuant to the agreement.

Turning to when the cause of action accrued, the court found that "[t]he plaintiff does not dispute that the defendant, if it had been required to make pension contributions, would have been making those monthly contributions from the time of his reinstatement in 1993. Under well established law, the plaintiff's ignorance until 2002 of the fact that those contributions were not being made, absent fraud which is not alleged here, does not save his action." Recognizing that there was "no basis in law" for a claim that the plaintiff's knowledge of the defendant's decision in late 2002 or early 2003 should operate as the accrual date, the court stated

that even using that later date the plaintiff's action was still untimely.

With respect to the defendant's special defense of laches, the court found: "In this case, the plaintiff discovered for the first time in late 2002 or early 2003 that the defendant had not been making contributions to his retirement since his reinstatement. He did not file this action until 2014, nearly eleven years after he first learned of the alleged breach. The plaintiff cannot refute the defendant's claim that the delay is unreasonable and inexcusable. Moreover, the defendant has offered credible evidence that it would incur significantly larger damages in order to purchase pension credits at this time, compared to the costs it would have incurred had the plaintiff timely [filed] his claim."

The plaintiff filed a motion to reargue pursuant to Practice Book § 11-11, which the court denied on September 14, 2016. This appeal followed.

I

The plaintiff first claims that the trial court erroneously concluded that his action is barred by the six year statute of limitations set forth in § 52-576. Specifically, he claims that the defendant had no obligation under the agreement to purchase the pension credit until October 10, 2017—the date on which the plaintiff became eligible to receive retirement benefits. He argues that "the town's October, 2013 refusal to honor its obligation to provide retirement benefits covering the pre-1993 period as required under the agreement (by failing to respond to plaintiff's counsel's second letter on the issue) is a repudiation of its promise to do so upon [the plaintiff's] future retirement."[5] In other words, the plaintiff claims that this action accrued in October, 2017, but that the defendant's October, 2013 repudiation permitted the plaintiff to proceed with his action under the theory of anticipatory breach. The defendant responds that "[t]he fact that pension benefits could not be realized until [the plaintiff's] 2009 retirement or 2017 eligibility is immaterial here, as the town would have been obligated to make monthly contributions toward pension funds throughout the entirety of its member's employment, creating a cause of action the first time it fails to do so. (Conn. Gen. Stat. Section 7-441)."[6] We first conclude that the factual finding underlying the court's conclusion that the action was time barred was clearly erroneous. Second, mindful that the statute of limitations is an affirmative defense that the defendant must prove by a preponderance of the evidence, we conclude that the defendant failed to meet its burden.

As an initial matter, we set forth the appropriate standard of review. "The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo. . . . The

factual findings that underpin that question of law, however, will not be disturbed unless shown to be clearly erroneous." (Internal quotation marks omitted.) *Nassra* v. *Nassra*, 180 Conn. App. 421, 435,     A.3d     (2018); accord *Travelers Casualty & Surety Co. of America* v. *Caridi*, 144 Conn. App. 793, 801, 73 A.3d 863 (2013). "[When] the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Gugliemi* v. *Willowbrook Condominium Assn., Inc.*, 151 Conn. App. 806, 811, 96 A.3d 634 (2014).

Both parties agree that the six year statute of limitations set forth in § 52-576 (a) applies in the present case. That statute provides: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section." General Statutes § 52-576 (a). Our Supreme Court has previously recognized that "[o]rdinarily, a defendant must plead the failure to meet the applicable statute of limitations as an affirmative defense, and the defendant bears the burden of proving the elements of the defense by a preponderance of the evidence." *St. Paul Travelers Companies, Inc.* v. *Kuehl*, 299 Conn. 800, 815, 12 A.3d 852 (2011).

We next set forth the well settled law concerning when a breach of contract action accrues. "[I]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted. . . . Although the application of this rule may result in occasional hardship, [i]t is well established that ignorance of the fact that damage has been done does not prevent the running of the statute, except where there is something tantamount to a fraudulent concealment of a cause of action."[7] (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Tolbert* v. *Connecticut General Life Ins. Co.*, 257 Conn. 118, 124–25, 778 A.2d 1 (2001). "Applied to a cause of action, the term to accrue means to arrive; to commence; to come into existence; to become a present enforceable demand." (Internal quotation marks omitted.) *Bouchard* v. *State Employees Retirement Commission*, 328 Conn. 345, 369, 178 A.3d 1023 (2018). "While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to establish the time when the plaintiff first could have success-

fully maintained an action." (Internal quotation marks omitted.) *Amoco Oil Co.* v. *Liberty Auto & Electric Co.*, 262 Conn. 142, 153, 810 A.2d 259 (2002). "The phrase 'successfully maintain an action' refers to the time at which the facts exist (or allegedly exist) to establish the legal elements of the cause of action." *Bouchard* v. *State Employees Retirement Commission*, supra, 370.

In the present case, the trial court's legal conclusion that the statute of limitations barred the plaintiff's action was premised on its factual finding that "[t]he plaintiff does not dispute that the defendant, if it had been required to make pension contributions, would have been making those monthly contributions from the time of his reinstatement in 1993. Under well established law, the plaintiff's ignorance until 2002 of the fact that those contributions were not being made, absent fraud which is not alleged here, does not save his action."[8] We conclude that this factual finding, in light of the evidence and the pleadings in the record, was clearly erroneous because there was no evidence in the record to support it. To the contrary, the plaintiff consistently represented to the trial court, beginning with the allegations of his complaint, that "[p]ension credits can be purchased retroactively at any time prior to the date the employee begins receiving retirement benefits." In his posttrial brief, the plaintiff repeated his claim that the defendant could have performed its obligation under the agreement by purchasing the pension credit at any time. Finally, in his motion to reargue, the plaintiff again argued that he "has not alleged that the town had a duty to purchase the credits in 1994. Rather, the plaintiff has alleged that the town must comply with the settlement agreement by restoring Bracken's retirement benefits for the period of September 13, 1987 through June 18, 1993 and that the town may retroactively purchase pension credits at any time prior to the date [Bracken] begins receiving retirement benefits."

On appeal, the plaintiff reiterates that the present dispute has "nothing to do with" monthly contributions made by the defendant to the retirement commission pursuant to § 7-441. The plaintiff argues, and we agree, that his recognition that the defendant had been making such contributions while he was employed as a police officer is unrelated to and does not weigh against his claim that the defendant was obligated, at any time until the date on which the plaintiff became eligible to receive retirement benefits, to purchase pension credit for the pre-reinstatement period.

We have independently examined the record and conclude that there is no evidentiary support for a factual finding that the alleged breach occurred upon the failure to make "monthly contributions" following the execution of the agreement. The defendant presented no testimonial evidence in support of its claim that any alleged

breach of the agreement would have occurred the first time it failed to make a monthly contribution. The only witness for the defendant was Suchocki, who testified that he did not recall having any conversations with the plaintiff regarding the defendant's purchase of any pension credit on his behalf; he never spoke to the plaintiff about the credit; he was not aware of anyone communicating on behalf of the defendant to the plaintiff that the defendant would not be purchasing the credit; he did not believe that he made any representations to the plaintiff that the defendant would purchase the credit when he retired and that he did not have "the authority to do that"; the decision as to whether to purchase the credit would not have been his; he was unaware of any decision by the board of selectmen or the police commission as to whether or not to purchase the credit; and he was aware the defendant was making inquiries in the spring of 2010 regarding the cost of purchasing the credit during a grievance proceeding related to the termination of the plaintiff's employment, but he did not know what happened to that settlement.

The defendant argues that "the crux of the decision came down to the issue of the credibility of the two witnesses," and that the trial court found Chief Suchocki's testimony credible and the plaintiff's testimony not credible. The plaintiff responds that the court did not expressly make credibility findings, and that the credibility issues raised by the defendant are not relevant to the appeal. The record reveals that the plaintiff testified that when he inquired of Suchocki after learning that the defendant had not purchased the pension credit, Suchocki told him that "they would make me whole when I was ready to retire." Suchocki denied having any such conversation, and the trial court properly could have credited Suchocki's testimony on this point. See *Martinez* v. *Commissioner of Correction*, 147 Conn. App. 307, 324, 82 A.3d 666 (2013) ("we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude" [internal quotation marks omitted]), cert. denied, 311 Conn. 917, 85 A.3d 652 (2014). The core of Suchocki's testimony, however, was that he had no involvement in and was not aware of any decision as to whether the defendant would purchase the pension credit, and therefore, his testimony provides no support for the defendant's argument that the alleged breach would have occurred upon the failure to make a monthly contribution.

Moreover, the defendant produced no documentary evidence to support its statute of limitations defense. To the contrary, the only documentary evidence addressing the method for retroactive purchase of pension credit for the plaintiff consisted of communications between the defendant and the retirement commission in 2010. The trial court found that the defendant made inquiries in the spring of 2010 regarding purchasing the

pension credit for the pre-reinstatement period as part of settlement discussions. The retirement commission informed the defendant that it could purchase pension credit for the plaintiff for the pre-reinstatement period at a cost of $99,316. The letter further informed the defendant that the calculation would be effective through May 1, 2010, and that if the defendant "does not purchase the service within this one-year period a new calculation will be required."

The trial court rejected the plaintiff's claim that the inquiry to the retirement commission constituted evidence that the defendant had not, by that point, decided that it would not provide retirement benefits to the plaintiff. The court's rejection of the evidentiary significance ascribed by the plaintiff, however, does not bear on the status of the record. That is, the commission's response, calculating the cost of the pension credit should the defendant wish to purchase it in the spring of 2010 is the only evidence in the record as to any process for the retroactive purchase of credit, and it provides no support for the defendant's claim that the defendant "would have been obligated to make monthly contributions . . . creating a cause of action the first time it fails to do so."

The defendant cites § 7-441 as support for its argument that its "obligation is to make monthly contributions while an employee works for the town and participates" in CMERS. The plaintiff recognizes that § 7-441 requires monthly payments for " '[m]embers,' " which the statute defines, with certain exceptions, as "any regular employee or elected official receiving pay from a participating municipality . . . who has been included by such municipality in the pension plan as provided in [§] 7-427 . . . ." General Statutes § 7-425 (5). The plaintiff argues, however, that he was not a member of CMERS during the pre-reinstatement period and that "the defendant obviously did not and could not make retirement contributions for him during that time frame." The plaintiff claims that after his "reinstatement on June 19, 1993 until his employment ended on November 19, 2009, he was a member of [CMERS] and the defendant made monthly retirement contributions for him as required by the statute. . . . The issue here has nothing to do with those monthly contributions; it is about at what point in time the defendant had to purchase credits for the designated period prior to the time [the plaintiff] was reinstated as an active employee."

We agree with the plaintiff that § 7-441 does not provide support for the defendant's claim that the cause of action for breach of the settlement agreement would have accrued upon the failure to make a monthly payment.[9] Section 7-441 (c) provides in relevant part: "All participating municipalities shall pay monthly to the Retirement Commission to be credited to the fund such

proportion of the pay of all members employed by such municipality as is determined from time to time by the Retirement Commission on sound actuarial principles to be necessary in addition to the contributions by members to provide future pensions based on service rendered by members subsequent to the effective date of participation as defined in section 7-427 other than the excess pensions referred to in subsection (b) of this section. . . .'' The defendant does not direct this court to any provision of the statute addressing the procedure for the retroactive purchase of pension credit, pursuant to a settlement agreement, covering a period of time prior to that employee's reinstatement.[10]

Accordingly, we conclude that the court's central finding that ''[t]he plaintiff does not dispute that the defendant, if it had been required to make pension contributions, would have been making those monthly contributions from the time of his reinstatement in 1993'' is clearly erroneous because there is no evidence in the record to support it. ''A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'' (Internal quotation marks omitted.) *Noroton Properties, LLC* v. *Lawendy*, 154 Conn. App. 367, 378, 107 A.3d 980 (2014); see also *Tobet* v. *Tobet*, 119 Conn. App. 63, 70, 986 A.2d 329 (2010) (where this court's review of the transcript revealed that no evidence as to the cost of tuition and board at University of Connecticut at Storrs was provided to the court, court's finding that the tuition and board was ''$16,000 or $17,000'' was clearly erroneous). We further conclude that because the evidence adduced at trial did not support the defendant's claim that the statute of limitations began to run upon its failure to make a monthly contribution, the defendant has failed to meet its burden of proof on its statute of limitations special defense.

II

The plaintiff next claims that the court erroneously concluded that his action was barred by the doctrine of laches. Specifically, he claims that he did not inexcusably delay filing suit and that the defendant failed to prove that the alleged delay has caused undue prejudice. We conclude that the defendant failed to meet its burden of proving that the elements of the doctrine of laches had been satisfied.

We first note the standard of review. ''The defense of laches, if proven, bars a plaintiff from seeking equitable relief in a case in which there has been an inexcusable delay that has prejudiced the defendant. . . . First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . A conclusion that a plaintiff has been guilty

of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law. . . . We must defer to the court's findings of fact unless they are clearly erroneous. . . . Whether the defense of laches was applicable to this action, however, is a question of law. When there is a question of law, our review of the court's decision is plenary." (Citation omitted; internal quotation marks omitted.) *Florian* v. *Lenge*, 91 Conn. App. 268, 281, 880 A.2d 985 (2005). "[T]he burden is on the party alleging laches to establish that defense." (Internal quotation marks omitted.) *Lynwood Place, LLC* v. *Sandy Hook Hydro, LLC*, 150 Conn. App. 682, 690, 92 A.3d 996 (2014); see also *Price* v. *Independent Party of CT—State Central*, 323 Conn. 529, 544, 147 A.3d 1032 (2016).

The trial court, in support of its conclusion that the doctrine of laches barred the plaintiff's action, stated: "In this case, the plaintiff discovered for the first time in late 2002 or early 2003 that the defendant had not been making contributions to his retirement since his reinstatement. He did not file this action until 2014, nearly eleven years after he first learned of the alleged breach. The plaintiff cannot refute the defendant's claim that the delay is unreasonable and inexcusable. Moreover, the defendant has offered credible evidence that it would incur significantly larger damages in order to purchase pension credits at this time, compared to the costs it would have incurred had the plaintiff timely [filed] his claim."

The plaintiff first argues that "[t]he trial court's finding that the action is barred by the doctrine of laches was premised on the court's erroneous conclusion that the plaintiff could have maintained a cause of action in 2002 or 2003 when he first learned that the defendant had not purchased pension credits covering the period identified in the settlement agreement—despite the defendant having no obligation to provide him with retirement benefits until 2017 and the town not yet having repudiated its obligation to do so." We agree that the trial court's determination that the delay was unreasonable and inexcusable was premised on its erroneous factual finding that the alleged breach occurred upon the failure to make a monthly contribution, as shown by its statement that the plaintiff learned in 2002 or 2003 that "the defendant had not been making contributions to his retirement *since his reinstatement*." See part I of this opinion.

The plaintiff further claims that the defendant has failed to prove that the alleged delay has caused undue prejudice and argues that the trial court's finding that the defendant would incur significantly larger damages in order to purchase the pension credit at this time is unsupported by any evidence. The plaintiff claims that the "only evidence in the record concerning the costs

associated with purchasing the pension credits" is the letter from the retirement commission dated April 29, 2010, indicating that a payment in the amount of $99,316 would be necessary to purchase the additional pension credit. The plaintiff claims that although the letter reflected that a new calculation would be required if the defendant declined to purchase the credit within one year and that it indicated an interest adjustment would be required up until the date of payment, there was no evidence that the "apparent increase would unduly prejudice the defendant." He further argues that "[t]he defendant presented no evidence concerning the relative cost of purchasing the pension credits in 1994 as opposed to in 2014 when this action was filed."

The defendant, in its three sentence response in its brief on appeal, generally asserts that the lapse of time would unduly prejudice the defendant; cf. *Lynwood Place, LLC* v. *Sandy Hook Hydro, LLC*, supra, 150 Conn. App. 691 ("[a] mere lapse of time does not constitute laches unless it results in prejudice to the defendants" [internal quotation marks omitted]); and repeats the trial court's challenged finding. The defendant does not direct this court to any evidence in the record that supports the challenged finding underlying the court's prejudice determination. Moreover, our independent review of the record reveals that the defendant presented no evidence, beyond the April 29, 2010 letter, as to the relative cost of purchasing the pension credit. Accordingly, we conclude that the trial court's finding that the defendant was prejudiced is clearly erroneous because it is not supported by evidence in the record. Because the defendant failed to show prejudicial delay, the court incorrectly concluded that it had established the defense of laches. See *Cifaldi* v. *Cifaldi*, 118 Conn. App. 325, 336, 983 A.2d 293 (2009); see also *Burrier* v. *Burrier*, 59 Conn. App. 593, 597, 758 A.2d 373 (2000) (holding that trial court incorrectly concluded that laches barred the plaintiff from seeking the relief she requested after it concluded that prejudicial delay had not been established where defendant failed to offer evidence concerning prejudice).

In its memorandum of decision, the trial court did not reach the merits of the plaintiff's claims because it concluded that the action was barred by the statute of limitations and the doctrine of laches. Accordingly, we remand this case to the trial court to decide the merits of the plaintiff's claims.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] By way of relief, the plaintiff asserts that he is entitled to judgment as a matter of law and requests that this court "find that the defendant breached the settlement agreement when it refused to purchase pension credits or otherwise provide plaintiff with retirement benefits from the period of September 13, 1987 through June 18, 1993." Because the trial court rendered judgment in favor of the defendant on its special defenses, the court did

not reach the merits of the plaintiff's claims, which involve questions of fact. See *McCoy* v. *Brown*, 130 Conn. App. 702, 707, 24 A.3d 597 ("[w]hether there was a breach of contract is ordinarily a question of fact" [internal quotation marks omitted]), cert. denied, 302 Conn. 941, 29 A.3d 467 (2011). "This court cannot find facts in the first instance." *Fazio* v. *Fazio*, 162 Conn. App. 236, 251, 131 A.3d 1162, cert. denied, 320 Conn. 922, 132 A.3d 1095 (2016). Accordingly, although we agree with the plaintiff that the judgment of the court must be reversed, we cannot grant the relief requested, and we remand this case to the trial court to consider the merits of the plaintiff's cause of action. See id. (concluding that trial court improperly found separation agreement unambiguous and remanding case to trial court to determine "the intent of the parties after consideration of all the available extrinsic evidence and the circumstances surrounding the entering of the agreement").

[2] The statutory framework establishing and governing the retirement system for certain municipal employees is codified at General Statutes § 7-425 et seq., and is referred to as the Municipal Employees' Retirement Act. See *Maturo* v. *State Employees Retirement Commission*, 326 Conn. 160, 172, 162 A.3d 706 (2017). Section 7-425 defines a " '[m]ember' " of the retirement system as, among other things, "any regular employee or elective officer receiving pay from a participating municipality . . . who has been included by such municipality in the pension plan as provided in [§] 7-427 . . . ." General Statutes § 7-425 (5). "General Statutes § 7-427 (a) authorizes each municipality to opt into the retirement system with respect to any department or departments that it chooses to designate for participation." *Maturo* v. *State Employees Retirement Commission*, supra, 172. General Statutes (Supp. 2018) § 7-441 (c) provides in relevant part: "All participating municipalities shall pay monthly to the Retirement Commission to be credited to the fund such proportion of the pay of all members employed by such municipality as is determined from time to time by the Retirement Commission on sound actuarial principles to be necessary in addition to the contributions by members to provide future pensions based on service rendered by members subsequent to the effective date of participation as defined in section 7-427 other than the excess pensions referred to in subsection (b) of this section. . . ."

[3] Officer Squires was the police officer who was hired into the position that the plaintiff contended should have been given to him.

[4] Although the defendant has cited various statutory sections in its pleadings and posttrial brief, such discrepancies appear to reflect scrivener's errors, given that the defendant has consistently argued at trial and on appeal that the plaintiff's action is barred by the six year breach of contract statute of limitations.

[5] We resolve the plaintiff's appeal on the ground that the defendant failed to carry its burden of proving that the action was commenced outside the statute of limitations or barred by the doctrine of laches. Our resolution of the appeal on these narrow grounds obviates the need for this court to address the question of when the plaintiff's cause of action accrued.

[6] Section 7-441 was recently amended by No. 17-107, § 1, of the 2017 Public Acts. These amendments have no bearing on the outcome of this appeal. All references in this opinion to § 7-441 are to the 2018 supplement of the General Statutes.

[7] We note that the plaintiff does not claim that the statute of limitations was tolled by the continuing course of conduct doctrine or by the doctrine of fraudulent concealment.

[8] On appeal, the defendant construes this statement contained in the trial court's memorandum as determining that if the plaintiff was entitled to pension credit for the pre-reinstatement period pursuant to the agreement, his "right of action would have accrued at the time of the breach, *that is in 1993*." (Emphasis added.) The defendant's position is untenable, given that the agreement was not executed until April 21, 1994.

[9] The defendant argues that the plaintiff misstates the defendant's obligations under the retirement system and contends that it "does not provide or administer retirement benefits." Although the plaintiff at times has characterized his claim as one for "retirement benefits," he specifically sought, in his prayer for relief, "[a]n order directing the defendant to perform the contract by purchasing pension credits for the plaintiff covering the period of September 13, 1987 through June 18, 1993." He further indicated in his appellate brief: "As an administrative and practical matter, in order to provide Bracken with retirement benefits pursuant to the town's pension plan with CMERS, the town must purchase the pension credits through CMERS based on an employee's accrued service."

At oral argument before this court, the plaintiff's counsel represented that the plaintiff had turned fifty-five in October, 2017, and had begun receiving pension benefits. He further represented that in the event the judgment for the defendant was reversed, the plaintiff would seek to amend its prayer for relief to seek damages, rather than specific performance, in order to make up the difference between the retirement benefits the plaintiff is currently receiving and the benefits he would have received had the defendant purchased the pension credit for the pre-reinstatement period.

[10] Neither party argues that the date the plaintiff discovered that the defendant had not yet purchased the pension credit serves as the accrual date for the plaintiff's action, and the trial court correctly recognized that "there is no basis in law" for any claim that the plaintiff's discovery in 2002 or 2003 that the defendant had not yet purchased the credit could serve as the accrual date.

———————————————————